OVERTON, J.
 

 ' Charles J. Rupp is the son of Annie Charlotte Kneipp by a former marriage. He was married twice. His first wife died in Texas in 1927. By this marriage there was born the minor, Constance Jane Rupp, concerning whom this litigation arose. After the death of his first wife, Rupp moved to Baton Rouge, in this state, with his child, where he served in the capacity of an employee of the Standard Oil Company. In the year following his first wife’s death he married his present wife. After this marriage, the Standard Oil Company sent Rupp to Sumatra, intending that he should remain there for two years. While Rupp was in Sumatra, his child lived in Baton Rouge with Mrs. Kneipp. On February 4, 1930, while Rupp was far distant in Sumatra, Mrs. Kneipp died, leaving a will by which she left a substantial interest in her estate to her grandchild, Constance Jane Rupp, but by which she left nothing to her son, Charles J. Rupp. Acting under instructions received from her husband, the second Mrs. Rupp, applied to be appointed dative tutrix of her stepchild. H. Leonard Allen, a maternal uncle of the child, who resided in Texas, applied to be appointed legal tutor of the child, alleging that the child’s father would be absent from the state for a period of two years. The father of the child intervened in these proceedings, asking that his wife be appointed dative tutrix, and, in the alternative, that he be appointed natural tutor. The court disregarded, it is said, this intervention on proof that no one had authority to file it for the father, whO' ‘was absent in Sumatra. The trial of these proceedings resulted in the appointment of the child’s maternal uncle, H. Leonard Allen, legal tutor of the minor, though whether any judgment, based on these proceedings, was signed, does not appear. A motion for a new trial was filed, which was eventually overruled. No appeal has been taken from the appointment made.
 

 On the day following the overruling of the motion for a new trial, the father of the minor, having made arrangements with the Standard Oil Company to leave Sumatra, appeared in Baton Rouge, and filed an application for appointment as natural tutor of his child, and ruled Allen and Mrs. Rupp, as applicants for the appointment as legal tutor and dative tutrix, respectively, of the minor, to show cause why he should not be appointed natural tutor. About the same
 
 time the
 
 father of the minor filed a proceeding to reduce the bequests made by Mrs. Kneipp in her will to the disposable portion, on the ground that, as the child of Mrs. Kneipp, he was entitled to his legitime. The minor was maíe a party defendant to this proceeding through a tutor ad hoc.
 

 Allen appeared and filed an answer to Rupp’s demand to be confirmed natural tutor of his child, opposing the confirmation on three grounds, one of which possesses no merit,- and has been abandoned. The remaining two are, first, that Rupp is incapacitated to act as tutor of his child on the ground that he is a party to a lawsuit, on the result of which
 
 *869
 
 the condition of the minor or part of her fortune may depend, he having attached the legacy made by Mrs. Kneipp to the minor, as being in excess of the disposable portion; and, secondly, on the ground that, as head of the community existing between him and Mrs. Rupp, he is indebted to the minor in the sum of $40, for money withdrawn from the savings account of the minor, on February 12, 1930, by Mrs. Rupp, which sum was not used for the benefit of the minor, and has not been repaid.
 

 The second objection urged by Allen to the appointment of Rupp may be disposed of on the facts of the case. The record leaves the question in grave doubt as to whether Rupp is indebted to his child in any sum whatever, It is true that Mrs. Rupp drew $40 from the minor’s savings account, and did this with the sanction of her husband. However, the record leaves it uncertain whether the $40 was anything more than money which belonged to Rupp, and was placed by him in the minor’s savings account. In fact, the record strongly suggests that it was such money. Hence it does not appear that the indebtedness urged exists.
 

 However, the first ground of opposition to the appointment of Rupp presents a serious question. His suit against the minor, to reduce the bequests made, was still pending when this suit was tried. Touching the question, presented by this ground, articles 302, 303, 304, and 305, of the Civil Code, appearing under the title, “Of the Incapacity for, the Exclusion from, and Deprivation of the Tutorship,” must be considered. Article 302 reads:
 

 “The following persons can not be tutors, to-wit:
 

 “1. Minors, except the father and mother;
 

 “2. Women, except the mother and grandmother ;
 

 “3. Idiots and lunatics;
 

 “4. Those whose infirmities prevent them from managing their own affairs;
 

 “5. Those whom the penal law declares incapable of holding a civil office;
 

 “6. Those who are themselves, or whose father or mother are parties to a law suit, on the result of which the condition of the minor, or part of his fortune, may depend;
 

 “7.
 
 Those who are debtors to the minor, unless they discharge the debt, prior to their appointment.”
 

 Article 303 relates to the exclusion and removal of tutors, and reads:
 

 “The following persons are excluded from the tutorship, and are even liable to be removed from it, if in the actual exercise of it:
 

 “1. Persons of a conduct notoriously bad;
 

 '“2. Those whose management shall manifest either incapacity or dishonesty.
 

 “3. Those who shall have neglected to cause an inventory to be made of the minor’s property within the time prescribed by law.”
 

 Article 304 relates to the causes of removal from the tutorship, and reads:
 

 “The following persons are liable to be removed from the tutorship:
 

 “1. The tutor who becomes insolvent after his appointment;
 

 “2. The tutor who fails to have the bonds, the purchase of which is authorized by article 34S, certified, countersigned and registered in the manner required by law;
 

 “3. The tutor who neglects to cause to be inscribed, in the manner required by law, the evidence of the minor’s legal mortgage against his tutor.”
 

 Article 305 relates to the father’s exclusion or removal from the tutorship, and reads;
 

 
 *871
 
 “No cause of exclusion or removal is applicable to the father, except the following:
 

 “1. Unfaithfulness of his administration;
 

 “2. Notoriously bad conduct;
 

 “3. Abandonment of his children and failure to support and maintain them for more than one year.”
 

 Articles 302 and 303 were in the Code of 1808, and also in the Code of 1825, though the Code of 1808, had two additional grounds of incapacity, and the Code of 1825 one, in the articles therein corresponding to article 302 of the present Code, while, in the Code of 180S, in the article corresponding to article 303 of the present Code, only two grounds for exclusion or removal are provided, the third ground of article 303 being omitted, and to the first ground, relating to notoriously bad conduct, is added depraved morals. Article 304 was in neither of those Codes, although each has incorporated in it an article providing for the removal of the tutor, should he become insolvent after appointment, which constitutes the first ground of article 304. Article 305, which is quoted above as amended by Act No. 82 of 1880, was not in the Code of 1808, but, barring the amendment of 1880, which added to the article its third ground, was in the Code of 1825. In view
 
 of the
 
 changes made from time to time in the articles, relating to the incapacity for, the exclusion from, and
 
 the
 
 deprivation of the tutorship, some seeming inconsistencies may be expected to be found in them.
 

 It is the contention of Allen that article 305 of the Code, relating to the exclusion and removal of the father as tutor, affects articles 303 and 304 alone, relating to the exclusion and removal of tutors, by making these articles inapplicable to the father, but leaves article 302, relating to the incapacity or disqualification of persons to be tutors, applicable to the father in all respects, including the pending of a lawsuit by the applicant against the minor, involving the whole or a part of the minor’s estate.
 

 If the ground of article 302, relating to the pendency of a lawsuit by the applicant against the minor, involving the minor’s estate is applicable to the father, then, under the evidence, the father, in this case, is incapacitated or disqualified tp be his child’s tutor, though it does not follow that he would not be entitled to the care and custody of his child.
 

 On the other hand, Rupp urges that, by virtue of article 305, which provides the only grounds upon which the father is excluded from the tutorship, article 302 is inapplicable to- -the father.
 

 Interpreted alone, each of the seven grounds incapacitating a person for the tutorship, prescribed by article 302, applies to all persons, including the father, with one. exception. This exception, appearing as the first ground of incapacity, namely, “Minors, except the father and mother,” shows clearly, together with the general wording of the remaining grounds, and that of the beginning of the article, namely, “The following persons cannot be tutors, to wit,” that all of the grounds, except the first, when the article is interpreted alone, apply to- the father as well as to others.
 

 Unless some other article of the Code withdraws the father from the application of article 302, or from the sixth ground thereof, relating to the pendency of a lawsuit between the applicant and the minor, involving the minor’s estate, the father, in this instance, is incapacitated. Article- 305 is pointed out as doing this, because it reads, “No cause of ■exclusion or removal is applicable to the father, except the following,” and then names them, none of which are enumerated in article 302.
 

 
 *873
 
 These articles of the Code must not be too strictly construed against the father and the interests of the minor. The court, in construing them, must have some discretion to carry out what would seem to be the legislative will.
 

 To incapacitate a person for the tutorship of a minor is to exclude that person from the tutorship, for such is the effect of incapacitating a person. By the terms of article 305, no cause of exclusion is applicable to the father save certain causes, among which is not the ground of incapacity here urged. Since tO' incapacitate the father on the ground urged would be to exclude him, the law rather prohibits than sanctions his being incapacitated on that ground. It is the result to be accomplished that the law regards rather than the mere form of words used to accomplish the result.
 

 It may be asked, however, if one of the grounds, named in article 302, is held not to apply to the father, why not all the grounds? The answer is that the effect of article 305 is to withdraw from applicability to the father all the grounds, named in article 302, save those which of necessity are applicable to him as well as to all others, such as, where the father is 'an idiot or lunatic, or where the father’s infirmities are such as to prevent him from managing his own affairs, or perhaps where the penal law declares him incapable of holding a civil office. In the two former, the legislature could not, with due regard for the minor’s interests, permit the father to qualify as tutor. It would be equivalent to saying that, in such instances, the minor should have no tutor.
 

 The interpretation we have given the law is reinforced, in principle, by a consideration of the fact that the tutorship is forced upon the father. He is of right the tutor of his child. Civ. Code, art. 248. To him alone the law allows no excuse, for article 301 reads: “The causes herein expressed [referring to the causes for excuses], or any other, can not .excuse the father from the obligation of accepting the tutorship of his children.” The interpretation is also reinforced, in principle, by a consideration of the fact that the rights of the minor are protected, notwithstanding the conflict of interest. The first paragraph of article 275 of the Code provides that “it is the duty of the under-tutor to act for the minor, whenever the interest of the minor is in opposition to the interest of the tutor.” It scarcely can be questioned that, had Rupp been confirmed natural tutor of his child, pri- or to his mother’s death, which he had a right to be, and, after the letters of tutorship had issued, the present conflict had arisen, the only result, from a legal standpoint, would have been that the under-tutor would have represented the minor, so far as relates to the conflict, and in all other matters the father, as the child’s tutor, would have continued to act.
 

 Our conclusion is that the father should be appointed natural tutor of his child, and that Allen, the child’s maternal uncle, was improvidently appointed.
 

 The trial court rendered judgment rejecting Rupp’s demand, but reserving to him the right to renew his application upon his withdrawal from the lawsuit against the minor, or upon the termination of the suit.
 

 The judgment appealed from is set aside, Challes J. Rupp is appointed natural tutor of his minor child, Constance Jane Rupp, and letters of tutorship are ordered to issue to him accordingly, upon his complying with the law.